FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 24, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT MANSHIP,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 4:16-cv-05153-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment.  ECF Nos. 19, 20.  Attorney Chad Hatfield represents Robert Manship (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 4.  After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

### JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on October 30, 2012, Tr. 266, alleging disability since April 30, 2012, Tr. 187-209, due to learning disabilities, cognitive disorder, anxiety, attention deficit hyperactivity disorder (ADHD), bipolar mood

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

disorder, and schizophrenia, Tr. 269. The applications were denied initially and upon reconsideration. Tr. 131-38, 141-47. Administrative Law Judge (ALJ) Caroline Siderius held a hearing on March 11, 2015 and heard testimony from Plaintiff, psychological expert, Stephen Rubin, Ph.D., and vocational expert, K. Diane Kramer. Tr. 43-84. The ALJ issued an unfavorable decision on June 15, 2015. Tr. 23-38. The Appeals Council denied review on September 26, 2016. Tr. 1-4. The ALJ's June 15, 2015 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on November 23, 2016. ECF Nos. 1, 9.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 24 years old at the alleged date of onset. Tr. 187. He attended special education classes in school and completed the twelfth grade in 2006. Tr. 270. His reported work history includes the jobs of asbestos remover, construction laborer, freight unloader, general laborer, and restaurant worker. Tr. 271, 276, 286. Plaintiff reported that he stopped working on April 23, 2012 due to his conditions. Tr. 270.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as

being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

### SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

# ADMINISTRATIVE DECISION

On June 15, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 30, 2012, the alleged date of onset.  Tr. 25

At step two, the ALJ determined Plaintiff had the following severe impairments:  borderline IQ; drug abuse and alcoholism; anxiety; and depression. Tr. 25.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 26.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform work at all exertional levels with the following nonexertional limitations:

> simple, routine 1-2 step tasks (no detailed work); only rare changes in work duties; repetitive, well learned tasks; ordinary production requirements in a low stress work environment; superficial, brief, noncollaborative contact with coworkers and supervisors; and little if no public contact.

Tr. 27-28.  The ALJ identified Plaintiff's past relevant work as general laborer, asbestos removal worker, fence installer, janitor, cashier II, and material handler and concluded that Plaintiff was not able to perform this past relevant work.  Tr. 36.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of laundry worker and production helper.  Tr. 37.  The ALJ concluded Plaintiff was not under a

disability within the meaning of the Social Security Act at any time from April 30, 2012, through the date of the ALJ's decision. *Id*.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh the medical opinions and (2) failing to make a proper step five determination.

## DISCUSSION

### 1.      Medical Opinions

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Philip G. Barnard, Ph.D., N.K. Marks, Ph.D., and Jill Gerber, MA, LMHC, CDP. ECF No. 19 at 9-15.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making

findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### A.    Philip G. Barnard, Ph.D.

Dr. Barnard completed a Psychological/Psychiatric Evaluation on September 19, 2012. Tr. 357-61. He diagnosed Plaintiff with ADHD/combined type, cognitive disorder not otherwise specified, and learning disorder not otherwise specified. Tr. 358. He gave Plaintiff a GAF of 60. Tr. 359. He opined that Plaintiff had a severe limitation in the abilities to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, (2) learn new tasks, (3) complete a normal work day and work week without interruptions from psychologically based symptoms, and (4) maintain appropriate behavior in a work setting. Tr. 359. He opined that Plaintiff had a marked limitation in the abilities to (1) understand, remember, and persist in tasks by following detailed instructions, (2) perform routine tasks without special supervision, (3) adapt to changes in a routine work setting, (4) make simple work-related decisions, (5) communicate and perform effectively in a work setting, and (6) set realistic goals and plan independently. *Id*. Additionally, he opined that Plaintiff had moderate limitations in the abilities to (1) understand, remember, and persist in tasks by following very short and simple instructions, (2) be aware of normal hazards and take appropriate precautions, and (3) ask simple questions or request assistance. *Id*.

The ALJ gave Dr. Barnard's opinion "little weight" because (1) it was internally inconsistent, (2) it was inconsistent with Plaintiff's reported daily activities, and (3) Dr. Barnard referred Plaintiff to Division of Vocational Rehabilitation (DVR). Tr. 34. Plaintiff asserts that these reasons fail to meet even the lowest threshold of the specific and legitimate standard. ECF No. 19 at 12.

Defendant's briefing appears to assert that the ALJ was only required to provide specific and legitimate reasons. ECF No. 20 at 6-7. The Court finds that the ALJ was required to meet the specific and legitimate standard when providing reasons for discounting Dr. Barnard's opinion because it is contrary to the opinions of nonexamining psychologists, Jerry Gardner, Ph.D. and Kent Reade, Ph.D., that Plaintiff was able to understand, remember, and carry out simple routine tasks, sustain concentration persistence and pace for simple routine tasks, and maintain superficial interactions with co-workers and supervisor. Tr. 93-94, 116-17.

The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician. *Lester*, 81 F.3d at 831. However, an ALJ may reject the testimony of an examining physician, in favor of a nonexamining physician when she gives specific, legitimate reasons for doing so, and those reasons are supported by substantial evidence in the record. *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (upholding ALJ's decision to reject the examining psychologist's functional assessment that conflicted with his own written report and test results).

The ALJ's first reason for rejecting Dr. Barnard's opinion, that it was internally inconsistent, meets the specific and legitimate standard. An ALJ rejecting an opinion due to internal inconsistencies meets the heightened standard of clear and convincing. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ stated that the level of limitations opined was inconsistent with the global assessment of function (GAF) score of 60. Tr. 34. The DSM-IV-TR defines a GAF score from 51 to 60 as "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)," and a GAF score from 61 to 70 as "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but

generally functioning pretty well, has some meaningful interpersonal relationships."[1] AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. TR 2000). Although GAF scores alone do not measure a claimant's ability to function in a work setting, *Garrison v. Colvin*, 759 F.3d 995, 1002 n.4 (9th Cir. 2014), the Social Security Administration has endorsed their use as evidence of mental functioning for a disability analysis. SSA Revised Administrative Message 13066 ("AM-13066-REV") (effective October 14, 2014); *See Craig v. Colvin*, 659 Fed.Appx 381, 382 (9th Cir. 2016). Therefore, the GAF score is substantial evidence, and the ALJ did not error in her reliance on the score in judging the internal consistency of Dr. Barnard's opinion.

Plaintiff additionally argued that the GAF of 60 is not inconsistent with the limitations opined because the limitations are the result of a low IQ which is not reflected in a GAF score. ECF No. 19 at 10. However, "[t]he GAF scale is to be rated with respect only to psychological, social, and occupational functioning," and the diagnosis of a learning disability includes the consideration of Plaintiff's IQ score. AM. PSYCHIATRIC ASS'N, DSM-IV-TR at 32, 49, 56. Therefore, the GAF score of 60 includes a consideration of Plaintiff's IQ score, and the ALJ did not error in her reliance on the score when weighing Dr. Barnard's opinion.

The ALJ's second reason, that the opinion was inconsistent with Plaintiff's daily activities, meets the specific and legitimate standard. A claimant's testimony about his daily activities may be seen as inconsistent with the presence of a

---

[1]The DSM-5, which was released in May of 2013 and after Dr. Barnard's opinion, eliminated the GAF scale stating "[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2013).

disabling condition.  *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990).

In this case, the ALJ found that Plaintiff's activities of babysitting an infant, taking care of himself, cleaning and mowing the lawn, cooking, surfing the internet, working on game systems, playing the guitar, and maintain at least one friendship and one relationship with a significant other suggested he had "better cognitive and social abilities than he demonstrated and Dr. Barnard found."  Tr. 34.  Plaintiff asserts that these activities are not consistent with the ability to perform work.

ECF No. 19 at 11.  However, the ALJ does not find that Plaintiff's activities show that he is capable of work activity, but that the activities are inconsistent with the opined limitation.  Tr. 34.  Therefore, this reason meets the specific and legitimate reason.

  The ALJ's third reason is that Dr. Barnard referred Plaintiff to DVR.  The Ninth Circuit has held that "[a] willingness to try to engage in rehabilitative activity and a release by one's doctor to engage in such an attempt is clearly not probative of a present ability to engage in such activity."  *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978).  In *Cox*, the ALJ improperly relied on a treating doctor's referral to vocational rehabilitation as proof of the claimant's ability to work.  *Id.*  Here, the ALJ did not base her finding of nondisability on Dr. Barnard's recommendation that Plaintiff engage in vocational rehabilitation, but rather, the ALJ  found that Dr. Barnard's recommendation was inconsistent with the level of limitations he reported on the Psychological/Psychiatric Evaluation form.  Indeed, Dr. Barnard stated that "vocational training or services [would] minimize or eliminate barriers to employment," Tr. 359, and this is inconsistent with the severe level of impairment opined by Dr. Barnard earlier on the form.[2]  As such, this

---

[2]The Court declines to find that all referrals to DVR are inconsistent with opinions of severe functional limitations.  The State of Washington DVR includes services for supported employment for a limited period and works with non-profit

reason meets the specific and legitimate standard. *See Shinn v. Astrue*, No. C08-1786-RSL, 2009 WL 2473513, at *5 (W.D. Wash. Aug. 10, 2009).

The ALJ provided legally sufficient reasons for discounting Dr. Barnard's opinion. As such, the Court will not disturb the ALJ's determination.

**B.     N.K. Marks, Ph.D.**

On August 7, 2014, Dr. Marks completed a Psychological/Psychiatric Evaluation. Tr. 519-24. He diagnosed Plaintiff with ADHD, dementia due to multiple etiologies with behavioral changes, alcohol dependence in self-stated remission, and panic disorder with agoraphobia. Tr. 521. He opined that Plaintiff had a severe limitation in the ability to set realistic goals and plan independently. Tr. 522. He further opined that Plaintiff had marked limitations in the abilities to (1) understand, remember, and persist in tasks by following detailed instructions, (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, (3) learn new tasks, (4) perform routine tasks without special supervision, (5) adapt to changes in a routine work setting, (6) make simple work-related decisions, (7) complete a normal work day and workweek without interruptions from psychologically based symptoms, and (8) maintain appropriate behavior in a work setting. *Id*. Additionally, he opined that Plaintiff had moderate limitations in the abilities to (1)

---

organizations to extend supported services to citizens who qualify. *See* WAC 388-891-0800, 388-891-050, 388-891-855, 388-891-0860. These supported services are analogous to Social Security's definition of sheltered work and provide a subsidized work opportunity for disabled individuals. *See* S.S.R. 83-33. A referral to DVR could include a referral to supported employment, and therefore would not be inconsistent with finding severe functional limitations. Here, however, Dr. Barnard's findings that Plaintiff's barriers to work would be minimized or eliminated with DVR is inconsistent with a referral for supported work.

understand, remember, and persist in tasks by following very short and simple instructions, (2) be aware or normal hazards and take appropriate precautions, and (3) ask simple questions or request assistance. *Id*.

The ALJ gave Dr. Marks' opinion "little weight" because (1) it was inconsistent with Plaintiff's reported daily activities, (2) Plaintiff had no contemporaneous mental health treatment besides a prescription for Adderall, and (3) Dr. Marks recommended DVR. Tr. 35. Plaintiff alleges that the ALJ's reasons failed to meet the specific and legitimate standard. ECF No. 19 at 13. Defendant does not allege which standard applies. ECF No. 20 at 8-9. The ALJ was required to provide specific and legitimate reasons to discount Dr. Marks' opinion because it is also contradicted by the opinions of Dr. Gardner and Dr. Reade. Tr. 93-94, 116-17; *See Roberts*, 66 F.3d at 184.

The ALJ's first reason, that the opinion was inconsistent with Plaintiff's reported activities, is not legally sufficient. A claimant's testimony about his daily activities may be seen as inconsistent with the presence of a disabling condition. *See Curry*, 925 F.2d at 1130. Here, the ALJ found that Dr. Marks' opinion was inconsistent with Plaintiff's report of helping around the house, cleaning the house, mowing the lawn, cooking, spending time on the internet and computer, attending AA meetings, visiting with his daughter, and riding the bus or getting rides from others. Tr. 35. However, unlike the ALJ's earlier determination that these activities suggested he had "better cognitive and social abilities than he demonstrated and Dr. Barnard found," the ALJ in reference to Dr. Marks' opinion failed to state how these activities were inconsistent with the opinion or inconsistent with a finding of disability. Therefore, this reason fails to meet the specific and legitimate standard.

The ALJ's second reason, that Plaintiff had no other contemporaneous mental health treatment besides a prescription for Adderall, is not supported by substantial evidence. Medical Exhibit 7F contains over a hundred pages of

counseling records from Catholic Family and Child Service from April of 2013 through October of 2014. Tr. 525-653. Plaintiff was seen on July 30, 2014, just two weeks prior to Dr. Marks' evaluation, and it was his "last scheduled session at this time due to his insurance changing." Tr. 531. The therapist, Eric William Thoma, MA, stated that he would hold the file open for a few weeks for Plaintiff to "sort through his insurance issues." *Id.* Plaintiff then returned to counseling in October 22, 2014. Tr. 529. Dr. Marks even stated that Plaintiff was currently seeking counseling through Catholic Family Services. Tr. 520. Therefore, the ALJ's conclusion that Plaintiff "had received no mental health treatment, except for Adderall," is not supported by substantial evidence.

The ALJ's third reason, that Dr. Marks recommended DVR, meets the specific and legitimate standard. As discussed above, a referral to DVR can be inconsistent with the severity of limitations opined. Here, Dr. Marks stated that "vocational training or services would minimize or eliminate barriers to employment" and that Plaintiff "may benefit from assistance from the Department of Vocational Rehabilitation to help him find a job placement or pursue further training." Tr. 522. Therefore, it is clear that Dr. Marks' referral was not for supportive services, but as a means to reenter the workforce. This is inconsistent with the severity of the limitations opined.

While the first two reasons the ALJ provided for rejecting Dr. Marks' opinion failed to meet the specific and legitimate standard, the third did. Therefore, any error resulting from the first two reasons was harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination."). The Court will not disturb the ALJ's findings regarding Dr. Marks' opinion.

**C.     Jill Gerber, MA, LMHC, CDP**

On May 5, 2014, mental health therapist, Jill Gerber, completed a Mental

Residual Functional Capacity form and a Psychiatric Review Technique form.  Tr. 501-16.  Ms. Gerber opined that Plaintiff met listings 12.04 and 12.07.[3]  Tr. 507-16.  On the Mental Residual Functional Capacity form, she opined that Plaintiff had a severe limitation in five out of the twenty functional abilities listed.  Tr. 501-03.  She also opined that Plaintiff had a marked limitation in eleven and a moderate limitation in four of the functional abilities identified on the form.  *Id.*  The ALJ gave Ms. Gerber's opinion no weight because (1) she did not provide a narrative, (2) it did not address Plaintiff's alcohol use, (3) it was inconsistent with Plaintiff's daily activities, and (4) it was based on Plaintiff's unreliable self-reports.  TR. 34.

Ms. Gerber is a therapist, not a psychologist, and, therefore, is not an acceptable medical source.  *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (2016).[4]  Generally, the ALJ should give more weight to the opinion of an acceptable medial source than to the opinion of an "other source," such as a therapist or counselor.  20 C.F.R. §§ 404.1513, 416.913 (2016).[5]  An ALJ is required, however, to consider evidence from "other sources," 20 C.F.R. §§ 404.1513(d), 416.913(d) (2016),[6] "as to how an impairment affects a claimant's ability to work," *Sprague*,

_____

[3]The requirements of listing 12.04 and 12.07 were amended on January 17, 2017, but this is a reviewing Court, and it will apply the requirements of the listings that were in effect at the time of the ALJ's decision.  *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,137 (Sept. 26, 2016).

[4]On March 27, 2017, these regulations were amended and the definitions of an acceptable medical source now appear in 20 C.F.R. §§ 404.1502(a), 416.902(a).

[5]On March 27, 2017, these regulations were amended and instructions on how to weigh evidence for cases filed before March 27, 2017 now appear in 20 C.F.R. §§ 404.1527, 416.927.

[6]On March 27, 2017, these regulations were amended and the instructions on how to weigh "other sources" now appear at 20 C.F.R. §§ 404.1527(f), 416.927(f).

812 F.2d at 1232. An ALJ must give "germane" reasons to discount evidence from "other sources." *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).

The ALJ's first reason, that Ms. Gerber did not provide a narrative, is not supported by substantial evidence. The Psychiatric Review Technique form is filled with handwritten explanations for the opinion expressed. Tr. 504-16. Additionally, the record contains notes from Ms. Gerber's counseling sessions with Plaintiff. Tr. 544-73, 579-88, 592-601, 605-19, 623-24, 628-29, 635-38, 643-45. Therefore, this reason is not supported by substantial evidence. However, any error resulting from the ALJ's reliance on this reason is harmless as she provided other legally sufficient reasons for rejecting Ms. Gerber's opinion. *Tommasetti*, 533 F.3d at 1038.

The ALJ's second reason, that the opinion did not address Plaintiff's alcohol use, meets the germane standard. Plaintiff had visits to the emergency room with evidence of heavy drinking on June 26, 2013, September 7, 2014, October 5, 2014, and February 22, 2015. Tr. 657-59, 672, 680, 696. On June 28, 2013, Ms. Gerber took a call from Dr. Kiki informing her that Plaintiff's alcohol level was over 200 in the emergency room and she wrote that "this was new information and there had been no other incidents of binge drinking during the time Robert had been coming to CFCS reported or determined." Tr. 606. Therefore, she was aware of at least one of Plaintiff's emergency rooms visits associated with drinking alcohol. But, her statement to Dr. Kiki indicates that she did not consider it an ongoing problem: "This therapist let Dr. Kiki know that if Robert was actively alcoholic this office would pursue inpatient treatment if medical was clear." *Id*. No inpatient treatment was pursued. The ALJ noted that at the time of her opinion, Ms. Gerber was under the impression that Plaintiff was not currently drinking, but given the evidence of continued drinking in the file found this to be unlikely. Tr. 35. Considering the record as a whole, the ALJ's determination that Plaintiff was not honest about his drinking is supported by substantial evidence. *See* Tr. 648 (On April 2, 2013

Plaintiff stated he had not drank alcohol since May 16, 2011); Tr. 631 (on April 17, 2013 Plaintiff admitted to drinking once a month). Therefore, this reason meets the germane standard.

The ALJ's third reason, that the opinion was inconsistent with Plaintiff's daily activities, meets the germane standard. The ALJ found that Ms. Gerber's opinion was inconsistent with Plaintiff's report of being the primary caregiver to an infant child. Tr. 34. As stated previously, a claimant's testimony about his daily activities may be seen as inconsistent with the presence of a disabling condition. *See Curry*, 925 F.2d at 1130. Here, the ALJ found that the opinion was inconsistent with the mental abilities necessary to care for an infant child. Tr. 34. This meets the germane standard.

The ALJ's fourth reason, that the opinion was based on Plaintiff's unreliable self-reports, is legally sufficient. An ALJ can discount the opinions of treating providers if the opinion is based "to a large extent" on the claimant's self-reports and not on clinical evidence so long as the ALJ provides a basis for her conclusion that the opinion was based on such self-reports. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ found that Ms. Gerber's limitations relied on Plaintiff's reported hallucinations, but that Plaintiff's previous reports showed that the hallucinations only occurred at night and did not limit him. Tr. 34. Ms. Gerber did cite to Plaintiff's reported hallucinations in her opinion, but the reports did not infer any resulting limitations. Tr. 506. Therefore, the reliance on the hallucinations as evidence of reliance on Plaintiff's self-reports in assigning limitations is not supported by substantial evidence. The ALJ also cited to Ms. Gerber's reliance on Plaintiff's reported physical symptoms without any diagnosis as evidence of meeting listing 12.07. Tr. 510. This does show that Ms. Gerber relied on Plaintiff's reports in assigning limitation. This in combination with the ALJ's finding that the intensity, persistence, and limiting effects of Plaintiff's symptoms as he reports them were not entirely credible, Tr. 32, that went

unchallenged by Plaintiff, supports the ALJ's determination and is sufficient under *Ghanim*. The Court will not disturb the ALJ's findings regarding the opinion of Ms. Gerber.

**2.    Step Five**

Plaintiff argues that the ALJ failed to meet her step five burden by relying on vocational expert testimony based on an incomplete hypothetical that failed to account for the opinions of Dr. Barnard, Dr. Marks, Ms. Gerber, and Dr. Rubin. ECF No. 19 at 15-17.

An ALJ is only required to present the vocational expert with those limitations the ALJ finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). As addressed above, the ALJ provided adequate reasons for discounting the opinions of Dr. Barnard, Dr. Marks, and Ms. Gerber. Plaintiff asserts that the ALJ's hypothetical excluded most of the limitations opined by Dr. Rubin. ECF No. 19 at 16. The ALJ gave some weight to the testimony of Dr. Rubin at the hearing, stating that alcohol and drugs were a bigger problem than Dr. Rubin testified. Tr. 33. The residual functional capacity assessment "must always consider and address medical source opinions. If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." S.S.R. 96-8p. Here, the ALJ provided a reason for not adopting Dr. Rubin's opinion in full: that Dr., Rubin did not view the alcohol and drugs as a significant problem. Tr. 33. Plaintiff failed to challenge this reason in his briefing. Therefore, the Court will not address the challenge to Dr. Rubin's opinion. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

Seeing as Plaintiff has failed to successfully show that the ALJ erred in her residual functional capacity determination, there is no resulting error at step five.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court finds the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS ORDERED:**

    1.    Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

    2.    Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED January 24, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE